[File No. 6731]

STATE OF NORTH DAKOTA, Appellant, v. OTTO RASMUS-SON, as County Auditor of Cavalier County, North Dakota, Respondents.

(300 NW 25)

Opinion filed September 6, 1941. Rehearing denied October 1, 1941

*Alvin C. Strutz,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for appellant.

*Price & Price,* for respondent.

BURKE, J. In April, 1920, Byron School District of Cavalier county offered to sell its bonds in the sum of $35,000 to the state of North Dakota as an investment for the permanent school funds. As a part of the offer the district filed a transcript of the proceedings by which the bond issue was authorized and a description of the territory comprising the district. At the time the offer was made Byron School District consisted of forty-five sections. The offer was accepted on April 22, 1920, subject to the approval of the attorney general which was given

on October 7, 1920. During the summer of 1920, statutory proceedings by which twelve sections were detached from Byron District were completed. The detached portion was organized into a new school district which was called McLean School District. An Arbitration Board was then formed pursuant to the provisions of § 1327, Comp. Laws 1913 to "effect an equalization of property, funds on hand and debts" between Byron District as reorganized and the new McLean District. Although the sale of the bonds authorized by Byron District, as originally constituted, had not been consummated, the bond issue was treated as a debt of the District by the Arbitration Board and it made its order with respect to this bond issue as follows: "It is ordered that Byron School District be allowed to retain the moneys received by the sale of bonds in the amount of $35,000 and assume full payment of principal and interest thereon." Subsequently the sale of the bonds was completed and Byron District received a portion of the proceeds thereof in 1921 and a portion in 1922.

At the time of the authorization of this bond issue, the governing board of Byron District had by resolution levied taxes for the payment of the bonds as follows: "There is hereby levied for the years 1920 to 1940, both inclusive, an annual tax upon all taxable property subject to taxation in said district, as follows: Fourteen hundred ($1,400) for the payment of annual interest and seventeen hundred and fifty ($1,750) dollars to create a sinking fund with which to pay the principal of said bonds when due." Before this levy was spread for the first time the detachment proceedings had been completed and the full amount of the levy for the year 1920 and each subsequent year up to and including 1939 was extended against the taxable property remaining in Byron District after the detachment and organization of McLean District. In December, 1939, total taxes sufficient to pay the entire bond issue, both principal and interest, had been levied upon and extended against the taxable property of Byron District. A considerable portion of these taxes remained uncollected and it was then apparent that the amount which would be realized from the taxes levied and extended would not be sufficient to pay the bonds in full when they became due on June 1, 1940.

In December, 1939, the state commenced this proceeding in the District Court of Cavalier county by petitioning for a writ of mandamus

commanding the county auditor of Cavalier county "to levy and extend against" the property detached from Byron District in 1920 "for each of the years 1920 to 1939, inclusive, the levy for each year to be the proportion of said levy of $1,400 for annual interest and of $1,750 for sinking fund . . . which the assessed value of said premises for each of said years bears to the total assessed value" of all the property in Byron District as originally constituted. Upon the filing of this petition the court directed the issuance of an alternative writ commanding the county auditor to make the levy or show cause why he should not make it. The auditor filed a return to the writ and on August 28, 1940, after a trial of the issues, the court entered judgment that the alternative writ be quashed and the proceeding dismissed. The state has appealed from the judgment.

Upon this appeal the only issue raised is one of statutory construction. The state takes the position that Byron District contracted with it, as the purchaser of its bonds that it would levy taxes for the payment of those bonds upon all of the property within the territory comprising the district at the time the bonds were issued; that the governing board of Byron District made a levy of taxes upon all of such property; that it then became the ministerial duty of the county auditor to extend the levy against all of such property notwithstanding the fact that a part of such property had been detached from the District, and that the county auditor, having failed for twenty years to perform this ministerial duty, may now be compelled to do so by a writ of mandamus. The state's position is not well taken. It is true, as is contended, that the statute (Comp Laws 1913, § 1336) requiring that a tax sufficient to pay the bonds be levied upon the taxable property in the district must be read into the bond contract, but the rights acquired by the bondholders are also subject to contemporary statutes relating to the detachment of territory from school districts, the organization of new districts and the equalization of property, funds on hand and debts between districts which have been affected by a change in boundaries. Sections 1147, 1327, 1328, Comp. Laws 1913; Sitte v. Paulson, 56 N.D 146, 216 NW 344. Section 1328, supra, reads as follows: "Such board (Arbitration Board) shall take an account of the assets, funds on hand, the debts properly and justly belonging to or chargeable to each corporation, or part of a corporation affected by such change, and levy such

a tax against each as will in its judgment justly and fairly equalize their several interests." We think it is apparent from a reading of the above section that the legislature intended that no tax levy should follow property after it had been detached from one school district and incorporated in another, except as directed by a board of arbitration. The legislature gave effect to good governmental and business practice by providing for a fiscal as well as a territorial severance. It follows that this proceeding was properly dismissed and the judgment of dismissal is therefore affirmed.

BURR, Ch. J., and MORRIS, CHRISTIANSON, and NUESSLE, JJ., concur.

BURKE, J. (on petition for rehearing). Plaintiff has filed a petition for rehearing in which it is suggested that, in reaching the conclusions above stated, we overlooked § 184 of the Constitution of North Dakota. That section is as follows: "Any city, county, township, town, school district, or any other political subdivision incurring indebtedness shall at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid."

All that this section requires is that political subdivisions make provision to collect taxes to pay an indebtedness at or before the time the indebtedness is incurred. In this case Byron School District made the required levy and the full amount thereof was extended against the taxable property of the district. It is true that there was less taxable property, both real and personal, in the district at the times of the annual extensions of the levy than there was at the time the levy was originally authorized, but there is no language in § 184, supra, which would restrict a change in the boundaries of a school district or, where land is detached from a district, require that prior unextended levies for debt service follow the detached land. There was full compliance with the constitutional requirements.

Plaintiff also suggests that we overlooked the decision of this court in the case of Coler v. Coppin, 10 ND 86, 85 NW 988. In that case

a judgment creditor sought to compel a levy to pay a judgment. The judgment had been rendered against a school district which had later been dissolved and its territory divided to form two new districts. Upon the dissolution and division, no equalization of the judgment indebtedness had been made nor any levy made to pay it. Both new districts were made parties to the action. The trial court equalized the judgment indebtedness in proportion to the assessed valuation of the respective districts and directed the issuance of writs of mandamus to compel each district to levy taxes to pay its share thereof. This court affirmed the judgment of the trial court, holding that in the circumstances the trial court had the power to direct an equalization of indebtedness. In the instant case the situation is entirely different. Here Byron District, which incurred the indebtedness, continued in existence. The levy which it had made to pay its indebtedness to the state was continued in effect and the full amount thereof was extended against the real and personal property remaining in that district. Plaintiff does not attack the equalization proceedings. It does not say that they were irregular or resulted in injustice. It contends that, without regard to the equalization proceedings, the indebtedness to the state should have been apportioned between the two districts in proportion to the assessed value of the property in each, and the tax levy for the payment thereof extended accordingly. As was said by Judge Bartholomew in construing an almost identical statute (Revised Code of 1895, § 732) in State ex rel. Reynolds v. School Dist. 6 ND 488, 493, 71 NW 722: "This is a misapprehension. It deprives the arbitrators of their principal function, which is to 'justly and fairly equalize their several interests.' If everything is to be divided in proportion to the percentage of taxable property in the respective districts, then an accountant is needed, rather than a board of arbitrators. But the law does not contemplate anything of that kind. . . . The arbitrators must consider all the circumstances surrounding each case, and the pecuniary benefits and detriment necessarily accruing to each district; and, when either district is necessarily benefited at the expense of the other, compensation should be awarded for such benefits. *Where the old district was largely indebted, this equalization of their respective interests could readily be*

*accomplished by fixing the proportion of such indebtedness to be borne by each of such districts."*

We have not said, as is intimated in the petition, that injured creditors may not, in a proper action, attack the equalization proceedings. That question is not before us. The petition for a rehearing is denied.

BURR, Ch. J., and MORRIS, NUESSLE, and CHRISTIANSON, JJ., concur.