COE v. STATE ELECTION BOARD et al.

No. 34789. Aug. 4, 1950.

*221 P. 2d 774.*

Mart Brown, W. T. Brunson, Rex H. Holden, and Coleman Hayes, all of Oklahoma City, for plaintiff.

Mac Q. Williamson, Atty. Gen., William A. Cornish, of McAlester, George F. Short, of Oklahoma City, Bill Logan, of Lawton, and Edward M. Box, of Oklahoma City, for defendants.

ARNOLD, V. C. J. William O. Coe and Johnston Murray were the candidates for the Democratic nomination for Governor in the run-off primary held July 25, 1950. According to the official tabulation of the returns to the State Election Board Murray received a majority of the votes cast throughout the state at said election. Coe within the time prescribed by law filed his application for recount of all the ballots cast in all the precincts in the state and deposited $19,250 in cash with the State Election Board, being $250

per county, the amount required by law.

In said application for recount Coe challenged the correctness of the announced results of said run-off primary election stating specifically that a recount will disclose a different result from that which now appears, showing him to have a majority of the votes cast, and requesting the State Election Board to order a recount of all ballots cast for said office at said primary election.

Hearing was had by the State Election Board on said application and same was denied by the Board on the ground and for the reason that, as stated by it, there is "no valid statute or law in the State of Oklahoma providing for a recount of votes cast in a run-off primary."

Immediately thereafter and on the same day Coe filed his petition for writ of mandamus in this court setting forth essentially the facts hereinbefore detailed praying that this court issue a writ of mandamus directing the members of the State Election Board to forthwith order a recount as prayed for by him and prohibiting said Board from issuing a certificate of nomination to Johnston Murray pending said recount.

The right to a recount of ballots cast at an election did not exist at common law. The grant of the right lies within the discretion of the Legislature. Its grant of the right on conditions prescribed by it is exclusive. The right granted can be exercised only upon compliance with the conditions prescribed and the conditions prescribed may vary as between general primaries to determine nominees of the parties and general elections.

Section 8 of Senate Bill No. 139 of the Session Laws of 1931 (26 O.S. 1941 §391) provides:

"Any candidate for party nomination to county office may, at any time before noon Thursday next following the primary election, file with the secretary of the county election board his or her challenge of the correctness of the announced results of said primary election by filing with the secretary of the county election board, whose duty it is to canvass the returns in such a race, a written application requesting a recount of the ballots, as to one or more precincts in such county and where said application is accompanied by a cash deposit in the sum of not less than Two Hundred Fifty ($250.00) Dollars, for each county. It shall be the duty of said election board to order said recount and proceed with the same as herein provided."

The section also provides that no certificate of nomination shall be issued by the county election board before Thursday noon nor by the State Election Board before Saturday noon next following "any primary election." It also provides for the exact procedure to be followed in effecting service of notice of contest in case of application for recount of ballots cast in the county, district or state races and makes exact provision for method of conducting recounts in each instance. The section also provides:

"If no contest shall be filed by Thursday noon next following the primary election, as to county officers, and by Saturday noon next following the primary election as to State or district officers, as herein provided, the county election board, as to county officers, and the State Election Board, as to State and district officers, shall declare the result of such election and shall issue certificates of nomination to the successful party as provided by law . . ."

It further provides:

". . . that in contest for party nomination for district or State offices, where a recount of votes in any county shall be required, the State Election Board shall have the right and authority to refer such contest to the county election board of such county involved, . . ."

"And upon filing of contests with the State Election Board, the Secretary shall notify the members of the board thereof, and such board shall at once assemble on the day therein named and proceed with the hearing or other disposition of such contest, as hereinbefore provided, . . ."

In view of the hereinbefore referred to provisions of section 391, supra, we hold that 26 O.S. 1941 §391 provides for recount of the ballots cast in a primary election for nomination for state office, sets out the essential requirements and prescribes the procedure therefor.

Our conclusion that said Senate Bill No. 139 applies alike to state, district and county offices is supported by our former decision in Otjen v. Kerr, 191 Okla. 628, 136 P. 2d 411.

It is contended that other rules of Otjen v. Kerr, supra, are applicable here, but we point out that that decision concerned the contest of a general election as distinguished from the recount of a primary election. In those instances the applicable statutory provisions are substantially different. Therefore, in its general aspects, the decision in Otjen v. Kerr, supra, has no application to the situation before us in this case.

The only condition prescribed by the Legislature for recount of votes cast in a primary election is that contained in paragraph 3 of section 391 quoted above. That condition is the filing of a challenge of the correctness of the results announced in the form of a written application requesting a recount of the ballots as to one or more precincts together with a deposit of $250 for each county or portion thereof within the time prescribed. When this condition is met, by the plain, simple and direct terms of the act it is the duty of said election board to order a recount and proceed with same as therein provided.

The historical legislative background forerunning this provision and judicial interpretation of the requirements theretofore placed on the right of contest or recount by statute indicates to us that the Legislature intended, as it did, to grant a recount without compliance with difficult requirements and conditions. It was intended by the Legislature that anyone defeated at the primary election might have a recount of the ballots cast in his race by simply, in good faith, challenging the correctness of the results announced in the form of a written application asking for a recount and depositing the required amount of money to bear the expense thereof which was determined by the Legislature to be ample and is commonly known to be sufficient.

Since the adoption of this provision in 1931 there has not been a recount controversy as to a primary election reached this court. The evident purpose of the Legislature in providing the simple, direct, adequate and practical way of obtaining a recount in a primary election has apparently been accomplished.

The application of Mr. Coe is sufficient to meet the requirements imposed by section 391, supra.

We now come to consideration of the holding of the State Election Board that section 391, supra, does not apply to the run-off primary. It is evident that this holding by the Board was based upon the fact that "run-off primary" is not mentioned in section 391, supra, and the contention here made that the peculiar wording of the clause in paragraph 3 of the section: "Any candidate . . . may at any time before noon Thursday next following *the primary election* . . . " confines the recount provided to the *first primary*. We do not so interpret the clause. The clause was designed to fix the time limitation for filing the application and the words therein "the primary election" refer to the next preceding primary election.

The first run-off primary was provided by House Bill No. 2, S.L. 1929. (Repealed 1937.) Therein recount of votes cast in both primaries was pro-

vided upon the condition of filing "a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations as to a county office or as to an office for which not more than the electors of one county are entitled to vote, if true, would change the result in his favor, . . ." If it were held that the 1931 Act did not apply to the run-off primary in effect at the time of its adoption, this situation would exist: the foregoing provision of the 1929 Act prescribing the conditions for recount of the votes cast at primary elections would be repealed by reason of inconsistency as to the first primary but still in effect as to the run-off primary. It is inconceivable that the Legislature intended that one set of conditions would have to be met to get a recount in the first primary while a very different set of conditions would have to be met to get a recount in the run-off or second primary.

In 1947 the Legislature passed Senate Bill No. 42 (chap. 11, S. L. 1947). The title thereof in part is as follows: "An Act Relating to Elections; . . ." There are other subsidiary matters specifically mentioned in the title of the act.

By section 11 of the act the present run-off primary was established. It is therein provided:

"Thursday noon after said run-off primary, the candidate having received the highest number of votes cast for the nomination for any county office, or for any office for which the electors of not more than one county are entitled to vote in which race a candidate has not filed a petition under the provisions of 26 O. S. 1941 §391 of this Title, shall be declared the nominee for such office, and be given a certificate of nomination by said board for the same, which certificate will entitle him to have his name placed on the official ballot at the ensuing election as the nominee of his party for such office. If such a petition is so filed within the time above provided, it shall be the duty of said board to have a hearing thereon as is provided in said Section 391. If a contest petition is filed with the State Election Board by noon Saturday following the date of such election, it shall be the duty of the State Election Board to have a hearing thereon, as provided in said Section 391."

It is contended that the foregoing provision purporting to make 26 O. S. 1941 §391 applicable to the run-off primary is invalid for the alleged reason that it is in violation of article 5, sec. 57 of the Constitution, prescribing: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title . . ."

The primary purpose of the act as shown by the first clause of the title is to legislate with reference to elections, which include primary and run-off elections. A similar objection was made to the Act of 1947 relating to public schools (S. L. 1947, Title 70, chap. 21; H. B. No. 85) in the case of School District No. 25 of Woods County v. Hodge et al., 199 Okla. 81, 183 P. 2d 575. The first clause of the title to that act reads: "An Act Relating to the Public Schools of Oklahoma; . . ." There was held that an act relating to the public schools sufficiently expressed the purposes of the act and was broad enough to include anything cognate and germane to the subject designated. In the act here under consideration we think that the general statement that the act is one relating to elections is broad enough to include any legislation incidental to the conduct of elections and to call attention to any such provisions contained in the act. The listing in the title of some of the incidental features of the act did not exclude the operation of the first clause of the caption as being fully informative of the purpose of the act. We think the title of this act did not violate section 57, art. 5 of the Constitution. All the arguments now made in support of the contention made by contestee have been answered adversely by us heretofore. Lowden et al. v. Luther, Co. Treas., 190 Okla. 31, 120 P. 2d 359; Crawford et al. v. Corporation Commission et al.,

188 Okla. 101, 106 P. 2d 806; Lowden et al. v. Washita County Excise Board, 188 Okla. 698, 113 P. 2d 370; Musick v. State, 185 Okla. 140, 90 P. 2d 631; Application of Oklahoma Turnpike Authority, 203 Okla. 335, 221 P. 2d 795.

The foregoing provisions of section 11 of the 1947 Act were designed to make applicable the provisions of section 391, supra, to the run-off primary there established and same are sufficient for that purpose.

It is provided (section 391, supra):

"Upon the completion of service as aforesaid, the county election board in case of a contest for county office, and the State Election Board, in case of a contest for State or district office, shall set such contest down for a day certain for hearing, same not to be more than twenty-four hours from the time of the completion of such service, . . ."

Though applicant has complied with the law, it is suggested that said time having expired the right to a recount has been lost. We do not agree.

Writ granted.

DAVISON, C.J., and WELCH, CORN, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.